IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VERONIKA McCARTHY,

                Debtor-Appellant,          OPINION AND ORDER

v.

                                                    13-cv-0092-wmc

NEKOOSA PORT EDWARDS STATE BANK,

                Creditor-Appellee.

---

*Pro se* appellant Veronika McCarthy appeals from a decision of the Bankruptcy Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 158(a) dismissing her Chapter 13 petition on the grounds that the proposed plan cannot be confirmed. McCarthy does not challenge the merits of the bankruptcy court's decision rather she challenges the court's award of attorney's fees incurred by Appellee Nekoosa Port Edwards State Bank ("NPESB") during the course of appellate proceedings in its foreclosure action and bankruptcy proceedings on its secured claim. In addition, McCarthy challenges the bankruptcy court's decision denying her application to employ an interpreter during the confirmation hearing. For the reasons explained below, the court will affirm the bankruptcy court's decisions in both respects.[1]

---

[1] Also before the court is NPESB's request for attorney's fees incurred in this court pursuant to Rule 8020 of the Federal Rules of Bankruptcy Procedure, because McCarthy's appeal is frivolous and should be sanctioned. (Appellee's Br. (dkt. #3) 23-25.) While the court affirms the bankruptcy court's decision, it does not find the appeal to be frivolous, warranting sanctions. Accordingly, the court will deny NPESB's request for sanctions.

BACKGROUND

The debtor-appellant Veronika McCarthy immigrated from Slovakia to the United States in 1998. That same year, she and her late husband obtained financing for their home by executing a three-year mortgage note in favor of NPESB. In relevant part, McCarthy agreed to:

> pay all reasonable costs and expenses before and after judgment, including without limitation, attorneys' fees, fees and expenses for environmental assessments, inspections and audits, and fees and expenses for obtaining title evidence incurred by Lender [NPESB] in protecting or enforcing its rights under this Mortgage.

(Bankr. Claim 8 (dkt #1-4) Ex. B.) After renewing the mortgage note in 2001 and 2004, NPESB refused to renew the mortgage note in 2007.

Despite this, McCarthy continued to make mortgage payments consistent with the terms of the note until June of 2010. Only after McCarthy stopped making mortgage payments, did NPESB initiate a foreclosure action in Adams County Circuit Court on November 15, 2010.

In response, McCarthy asserted several counterclaims. The Adam County Circuit Court ruled in favor of NPESB on February 17, 2011, and McCarthy appealed. On April 9, 2012, Wisconsin Court of Appeals affirmed the lower court's decision with respect to NPESB's foreclosure action, but remanded for further proceeding with respect to McCarthy's counterclaims. On March 20, 2013, the Adam County Circuit Court dismissed all of McCarthy's counterclaims.

During the pendency of the foreclosure proceedings, McCarthy filed two bankruptcy petitions to protect her homestead. She filed her first Chapter 13

bankruptcy petition on September 19, 2011, which she voluntarily dismissed on March 5, 2012. After the Wisconsin Court of Appeals affirmed the trial court's foreclosure ruling, McCarthy filed her second Chapter 13 bankruptcy petition.

In McCarthy's second bankruptcy petition, NPESB filed a proof of claim in the amount of $52,187.12 with interest at 7.5%. McCarthy objected, arguing that the amount due should be $41,411 after excluding attorney's fees not reasonably incurred in connection with NPESB's debt collection. In her Chapter 13 plan, McCarthy proposed to repay NPESB in this lesser amount through a monthly payment of $498 for 60 months and a lump-sum payment for the balance, which was to be refinanced during the life of the plan.

After the final hearing on the proposed plan had been scheduled, McCarthy filed an application to employ an interpreter for the first time. NPESB objected on the grounds that McCarthy is proficient in English. The bankruptcy court held a preliminary hearing on October 1, 2012, but reserved the question as to the need for an interpreter until the day of the final hearing, October 4, 2012.

That day, the bankruptcy court conducted an examination of McCarthy and found her grasp of English sufficient to proceed without an interpreter. At the end of the trial, the court issued an oral opinion dismissing McCarthy's Chapter 13 petition, finding that a plan with a final balloon payment could not be confirmed under 11 U.S.C § 1325(a)(5)(B)(iii)(I). The court also found NPESB's attorney fees reasonable, awarding the full amount of its claim ($52,187.12).

OPINION

This court reviews a bankruptcy court's findings of fact deferentially for clear error and its legal conclusions de novo. *See In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (citing Fed. R. Bankr. P. 8013 and *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998)). The court reviews the bankruptcy court's decision to deny McCarthy's request to employ an interpreter under an abuse of discretion standard. *See United States v. Johnson*, 248 F.3d 655, 662 (7th Cir. 2001). Similarly, the court reviews the bankruptcy court's ruling with respect to attorney's fees under an abuse of discretion standard. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

Under these differential standards, this court finds that the bankruptcy court neither erred in denying McCarthy an interpreter, nor in finding reasonable the attorney's fees incurred in enforcing NPESB's rights.

I. Interpreter

With respect to her first challenge, McCarthy argues that: (1) NPESB had effectively waived any right to object to McCarthy's application to employ an interpreter because it did not object to the same request in a previous proceeding; (2) holding an accommodation hearing on the same day as a substantive hearing was unfair; (3) the finding that McCarthy's English skills were sufficient to understand the bankruptcy proceeding is erroneous; and (4) because she could not understand the proceeding without an interpreter, the denial of McCarthy's request for an interpreter was prejudicial and violated her fundamental rights.

4

A party is only statutorily entitled to appointment of an interpreter if the court determines that (1) the party speaks only or primarily a language other than English; and (2) this fact inhibits the party's comprehension of the proceedings or communication with counsel. 28 U.S.C. § 1827(d)(1). The United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional one. *United States v. Johnson*, 248 F.3d 655, 661 (7th Cir. 2001) ("[T]he CIA [Court Interpreter Act] was not enacted to create new constitutional rights for defendants or expand existing constitutional safeguards." (internal citation and quotation marks omitted)). The appointment of an interpreter is a matter resting largely in the discretion of the trial court. *Perovich v. United States*, 205 U.S. 86, 91(1907).

McCarthy argues that the bankruptcy court erred in allowing NPESB to object to her application for an interpreter given its failure to raise such an objection in the previous foreclosure proceedings. McCarthy does not cite, nor did this court's research reveal, any precedent or statute supporting an argument that NPESB somehow waived its right to object to the interpreter application simply because it did not raise an objection in a previous proceeding. Regardless of NPESB's reason for not objecting in the prior state foreclosure action, that decision did not bar it from objecting in the bankruptcy action.

Moreover, NPESB's objection was timely. McCarthy filed the application to employ an interpreter on September 18, 2012. NPESB filed its objection on September 25, 2012, giving McCarthy sufficient time to respond to NPESB's objection, which she did on September 26, 2012.

Second, McCarthy argues that the bankruptcy court erred in holding the accommodation hearing on the same day as the confirmation hearing and that this error constitutes an abuse of discretion under *Strook v. Kendinger*, 2009 WI App 31, 316 Wis. 2d 548, 766 N.W.2d 219. *Strook*, however, is factually and legally distinguishable from the present case. In *Strook*, the plaintiff, who was deaf, filed the lawsuit *pro se* and sought appointment of a sign language interpreter. 316 Wis. 2d 548, 552. The Wisconsin Court of Appeals held that the trial court abused its discretion by hearing the interpreter issue and the substantive issue simultaneously for judicial efficiency reasons. *Id.* at 566-67. The court reasoned that it is inefficient because "the court runs the risk that the (substantive) hearing will have to be postponed should it be determined that an accommodation is needed." *Id.* at 566. In addition, the court worried that it would cause "fear and confusion to a person with a disability if he or she is required to appear at an important proceeding not knowing whether the request for accommodation is going to be granted." *Id.* at 567.

In the present case, McCarthy is not disabled. In the best position to do so, the bankruptcy court found that she possesses sufficient English skills to understand spoken English, as well as the legal proceedings. Unlike *Strook*, McCarthy was also represented by counsel throughout the bankruptcy proceedings. The *Strook* court's special consideration for unrepresented, disabled people simply does not apply to the case at hand. In addition, unlike the trial court in *Strook*, the bankruptcy court held a preliminary proceeding on the interpreter issue on October 1, 2012, *three days* before the final confirmation hearing. Finally, even if these findings were somehow even arguably in

6

error, McCarthy has failed to identify any actual prejudice caused by the bankruptcy court issuing its final decision on her interpreter request on the same day as the confirmation hearing.

Next, McCarthy challenges the bankruptcy court's determination that her English skills are sufficient under 28 U.S.C. § 1827.  Here, too, the record amply supports the bankruptcy court's finding that McCarthy possessed sufficient English skills to understand the bankruptcy proceeding.  At the time of the hearing, McCarthy had resided in the United States for more than 14 years.  (Bankr. Court Tr. (Bankr. dkt. #73) 7:1-2.)  In 2004, she received a bachelor degree in psychology from University of Steven Point where most of her courses were taught in English.  (*Id.* at 7:14-25.)  Three years later, she completed her master degree in education from Grand Canyon University.  (Appellant's Obj. (Bankr. dkt. # 46) Ex. D.)

Moreover, during the confirmation hearing, McCarthy responded to Judge Martin's questions, testified in English and responded to the opposing counsel's cross-examination without significant difficulties.  At times, she may have needed the judge and the attorneys to rephrase the questions but that did not appear to prevent her from understanding the proceeding.  At the very least, the bankruptcy court's finding that she was capable of understanding the bankruptcy proceeding is not clearly erroneous and, in turn, the bankruptcy court did not abuse its discretion in denying her application to employ an interpreter.

Lastly, McCarthy argues that bankruptcy court's denial of her application for an interpreter is a violation of due process, infringes her fundamental rights, and amounts to

a structural error requiring automatic reversal. Having found that the bankruptcy court did not abuse its discretion in denying her request, this basis for relief is a nonstarter. Even if her claim had factual support, as noted above, the United States Supreme Court has recognized no constitutional right to a court-appointed interpreter. *See Johnson*, 248 F.3d at 661.


II. **Attorney's Fees**

With respect to her second challenge, McCarthy alleges that attorney's fees incurred by NPESB after February 17, 2011, on her appeal from the state circuit court's grant of foreclosure and in bankruptcy were unreasonable.[2] McCarthy argues that: (1) courts must use the "lodestar method" to determine a reasonable attorney's fee; and (2) because both the hourly rate and the hours NPESB's attorney spent in the state court appeal proceeding and bankruptcy actions are unreasonable, this portion of NPESB's award should not be allowed.

The first question is whether the bankruptcy court abused its discretion by not applying the lodestar analysis proposed by McCarthy. The lodestar analysis is typically required in determining whether an attorney's fee award is reasonable under a statutory fee-shifting scheme. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). In a contractual fee-shifting case, however, courts are not required to engage in a

---

[2] McCarthy does not challenge the attorney's fees included in the Adams County Circuit Court's February 17, 2011, award, which was also affirmed by the appellate court. She challenges only the attorney's fees incurred in the appellate proceeding and in both of the bankruptcy proceedings.

8

detailed, hour-by-hour review of a prevailing party's billing records. *See Medcom Holding Co. v. Baxtar Travenol Labs, Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). In such a case, the proper standard is a "commercially reasonable" standard. *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) (holding that fee-shifting contracts require "reimbursement for commercially-reasonable fees no matter how the bills are stated").

In determining whether the attorney's fees are commercially reasonable, a court will look to the aggregate costs in light of the stakes of the case and opposing party's litigation strategy. *See Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 572 (7th Cir. 2011) (citing *Medcom*, 200 F.3d at 521). Here, no statutory fee-shifting provision is involved. Instead, the bankruptcy court properly relied on Paragraph 17 of the NPESB's mortgage, which requires McCarthy to pay attorney's fees incurred by NPESB in the enforcement of its mortgage. (Bankr. Claim 8 (dkt #1-4) Ex. B.) Therefore, the bankruptcy court did not abuse its discretion by rejecting a more detailed lodestar analysis in favor of a commercially-reasonable standard. On the contrary, the court used the best measure of value by awarding the actual, market-driven fees NPESB incurred in collection. *See RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010) ("[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them." (internal citation and quotation marks omitted)).

The second question is whether the bankruptcy court abused its discretion in finding commercially reasonable NPESB's costs of enforcement claim incurred in the bankruptcy proceedings. The bankruptcy court's analysis supports its determination that

9

this portion of NPESB's fee award is allowed as well.  The bankruptcy court correctly ruled that NPESB had the burden to prove the validity of these additional attorney's fees.  The attorney's fees incurred during the appellate proceeding of the foreclosure action and the bankruptcy proceeding were clearly related to the protection and enforcement of NPESB's rights under the mortgage.  NPESB also presented the actual invoices incurred to support its claim.

McCarthy challenges NPESB's claim by pointing out errors with respect to the hours recorded in NPESB attorney's time sheets.  Since there are errors in the time sheets, McCarthy reasons, the amount of the attorney's fees charged must be unreasonable.  The blatant errors in NPESB counsel's time records are certainly troubling.  However, as previously discussed, the bankruptcy court is not required to engage in detailed, hour-by-hour review of the bill records.  *Medcom*, 200 F.3d at 521.  The question, rather, is whether the overall attorney's fees were commercially reasonable.  *Id*.  Therefore, the errors in the time sheets do not make the overall amount of the attorney's fees actually incurred by NPESB *per se* unreasonable.

McCarthy also argues that the hourly rate NPESB's attorney charged was higher than the typical rate in a routine foreclosure action.  However, McCarthy did not provide any evidence showing that the NPESB attorney's hourly rate was *in fact* higher than that typically charged for comparable work. In addition, NPESB was required to defend its rights under the mortgage in both the state appellate court and the bankruptcy court.  The bankruptcy court did not abuse its discretion in concluding that NPESB had

engaged in more than a routine foreclosure action or that the higher attorney's fees incurred were commercially reasonable.

### III.  NPESB's Request for Sanctions

Finally, NPESB requests in its appellate brief that McCarthy be ordered to pay its attorney's fees related to this appeal under Rule 8020 of Federal Rules of Bankruptcy Procedure.  A request for sanctions in an appellate brief is procedurally improper because it fails to provide the opposing party a sufficient notice and opportunity to respond to the request.  See Fed. R. Bankr. P. 8020; *In re Torres Martinez*, 397 B.R. 158 (B.A.P. 1st Cir. 2008); *In re Marino*, 234 B.R. 767, 770 (B.A.P. 9th Cir. 1999).  Since NPESB did not file a separate motion, the request for sanctions is denied.  Even if considered, fees do not appear warranted since McCarthy's challenge while ultimately without merit, was not frivolous.

ORDER

IT IS ORDERED that:

1) the bankruptcy court's denial of appellant Veronika McCarthy's application to employ an interpreter is AFFIRMED;

2) the bankruptcy court's ruling allowing appellee NPESB to incorporate its attorney's fees in its secured claim is AFFIRMED; and

3) Appellee Nekoosa Port Edwards State Bank's request for sanctions pursuant to Fed. R. Bankr. P. 8020 is DENIED.

Entered this 30th day of July, 2013.

                                                                                     BY THE COURT:

                                                                                     /s/

                                                          _____
                                                          WILLIAM M. CONLEY
                                                          District Judge